# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| MICHAEL SLATON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2: 19 CV 87 DDN |
| ) | |
| CLIMAX MOLYDBENUM COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Before the Court is the motion of defendant Climax Molybdenum Company to dismiss the action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The matter was heard by the Court on February 11 and June 22, 2020, after jurisdictional discovery was conducted.

The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332, due to the diversity of the parties' citizenship and the amount in controversy.

For the reasons set forth below, the Court grants the motion to dismiss.[1]

## BACKGROUND

Defendant Climax Molybdenum Company removed this action to this Court from the Circuit Court of Marion County, Missouri, under 28 U.S.C. §§ 1332, 1441, and 1446. In his state court petition, plaintiff Michael Slaton alleges the following facts. He is a resident of Arkansas. Defendant is a Delaware corporation with its principal place of business in Phoenix, Arizona. Defendant owns and operates a facility in Fort Madison, Iowa, that mines, manufactures, markets, sells, and ships molybdenum oxide crystalline to

---

[1] For the more expeditious communication of its ruling, the Court on June 22, 2020, following the hearing, orally dictated into the record its opinion and disposition of the motion. This Memorandum opinion and the Judgment Order that accompanies it constitute the Court's official ruling of the matter.

locations throughout the United States, including Iowa, Missouri, Kansas, and Louisiana. Defendant ships its products over highways and roads in Missouri for delivery in Missouri and in other states, including Louisiana.

Plaintiff alleges that before July 23, 2018, defendant hired Leon Cannon Trucking, LLC, plaintiff's employer, to pick up a load of molybdenum from defendant's facility in Fort Madison, Iowa, on July 23, 2018, and transport it to Port Allen, Louisiana. On the morning of July 23, 2018, plaintiff arrived with his tractor trailer truck at defendant's facility in Iowa and brought with him two straps with which to secure the cargo, as directed by defendant. Plaintiff backed his truck to defendant's dock as directed by defendant. He was then instructed to proceed to a waiting area, there to wait while defendant's employees loaded eleven superbags of molybdenum into the trailer and secured the load with the straps plaintiff brought so it would not shift during the transportation. After the material was loaded, defendant directed plaintiff to drive the truck to a weigh station. There plaintiff received a bill of lading for the load's transfer from defendant to its destination in the state of Louisiana.

Plaintiff alleges that defendant knew or had reason to know that plaintiff would drive the truck on Missouri highways, including US Highway 61. Plaintiff also alleges that defendant knew or had reason to know that, if the load was not properly secured, it could shift during the transport and cause plaintiff to lose control of the truck, placing him in danger of harm.

Later on July 23, 2018, after plaintiff had driven the truck and tractor from defendant's facility in Iowa, while he was driving on US Highway 61 in Marion County, Missouri, the bags of molybdenum shifted as he negotiated a curve in the highway. This caused him to lose control of the tractor as the trailer fishtailed and broke loose from the tractor, which caused the tractor to roll over. Plaintiff was ejected from the tractor cabin and was injured.

Plaintiff seeks relief in two claims: common law negligence in loading the tractor trailer (Count 1) and negligence *per se* for violating federal regulations (Count 2).

As stated, defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that it is not subject to personal jurisdiction in Missouri for plaintiff's injury. Defendant argues this Court does not have specific personal jurisdiction over this matter, given that all alleged tortious actions taken by it occurred in Iowa.

The Court granted plaintiff leave to conduct jurisdictional discovery. Plaintiff submitted discovery requests to defendant for information about defendant's shipments into Missouri for delivery in Missouri, Louisiana, and Texas. On February 21, 2020, the Court ordered defendant to respond to plaintiff's requests by April 10, 2020. The parties filed supplemental memoranda and discovery responses with the Court prior to the hearing held on June 22, 2020.

## DISCUSSION

Defendant argues that plaintiff has indicated no act by which defendant purposely availed itself of conducting business in Missouri, citing *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014), or any activity that took place in Missouri that is subject to Missouri's regulation, citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780-81 (2017). Defendant noted that "[n]one of the allegedly tortious actions conducted by [it] took place in Missouri and, as such, [its] conduct does not connect it to Missouri in a meaningful way." (Doc. 26 at 3.) Conversely, plaintiff argues that the shipping contract between his employer and defendant effectively controlled his route, which included Missouri and thereby subjected defendant to personal jurisdiction in this state.

The Constitution's Due Process Clause requires that, for the exercise of specific personal jurisdiction over a non-resident defendant, there must be minimum contacts between the defendant and the forum state such that the suit does not offend the traditional notions of fair play and substantial justice. U.S. Const. amend. XIV; *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). It is plaintiff's responsibility to "make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc.*, at 820; *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 909 (8th Cir. 2012). When a motion to dismiss for lack of personal jurisdiction is made in a diversity jurisdiction case, such as this case,

3

the court must make a two-step inquiry. The first applies the long-arm statute of the forum state and the second looks to the Due Process Clause. *Myers v. Casino Queen, Inc., id.* at 909-10.

Relevant to whether plaintiff's claims are covered by the Missouri Long-Arm Statute, Mo. Rev. Stat. § 506.500, plaintiff alleges that his tractor-trailer was loaded in Iowa by defendant in a negligent manner that caused the load to shift and the truck to crash in Missouri. Defendant argues that plaintiff's claims do not arise out of any act of defendant in Missouri.

Missouri's long-arm statute provides that any person or firm that commits a tortious act within Missouri thereby submits itself to the jurisdiction of Missouri courts for any cause of action arising out of the alleged act. Rev. Stat. Mo. § 506.500.1(3). This provision covers tortious acts that occur outside Missouri that have consequences in Missouri. *State ex rel. PPG Industries, Inc., v. McShane*, 560 S.W.3d 888, 892 (Mo. banc 2018); *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 232 (Mo. banc 2010) (negligent misrepresentation ruled sufficient to qualify under Missouri long-arm statute); *Myers v. Casino Queen, Inc.*, 689 F.3d at 910-11 (ruling Missouri long-arm statute applies to extraterritorial act that had foreseeable consequences in Missouri). Plaintiff's allegation that defendant's negligence in Iowa in securing the load caused the Missouri incident in which plaintiff was injured is sufficient to bring its allegedly tortious activity under the Missouri long-arm statute.

Next, the Court must determine whether the defendant had constitutionally sufficient "minimum contacts" with Missouri. Defendant argues that, regarding the occurrence on July 23, 2018, it did not purposefully avail itself of the privilege of conducting activities in Missouri, nor did it purposely direct its conduct towards Missouri.

Plaintiff must show that defendant *itself* acted in a way that related to plaintiff's location in Missouri *when he was injured*. In 2011, the Supreme Court ruled *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 US. 873 (2011). In that case, plaintiff was injured in New Jersey while using equipment manufactured in England. The Supreme Court of New Jersey ruled there was personal jurisdiction under the Due Process Clause, if the defendant

4

knew or should have known that its products are distributed in a system that might lead to its products being sold in the 50 American states. 564 US. at 877. When discussing specific personal jurisdiction, the United States Supreme Court stated:

> The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must "purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Sometimes a defendant does so by sending its goods rather than its agents. The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

*Id.* at 882. (quotation marks omitted). Further, "[t]his Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 883. Here, plaintiff's employer was an independent contractor, not defendant's agent, at the time of the accident on July 23, 2018.

In *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cnty.*, 137 S. Ct. 1773 (2017), the Supreme Court made the following comments about the requirements of due process: The court's inquiry must focus on the defendant's relationship to the forum state. 137 S. Ct. at 1779. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, *the very controversy* that establishes jurisdiction." *Id.* at 1790 (italics added) (citations omitted).

It is instructive to note that the Supreme Court stated further, "For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 1781 (ellipses and quotation marks omitted).

The Eighth Circuit has established a five-factor test for assessing the sufficiency of contacts: (1) the nature and quality of contacts with the forum state; (2) the quantity of such

5

contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest; and, (5) convenience of the parties. *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). Plaintiff here correctly argues that the first three factors are the most important. (*Id.*) Additionally, plaintiff argues that defendant knew plaintiff would drive through Marion County, Missouri, on US Highway 61 to deliver molybdenum to Port Arthur, Louisiana. Defendant argues that a distributing relationship does not suffice to establish personal jurisdiction, citing *A.T. Through Travis v. Hahn*, 341 F. Supp. 3d 1031, 1037 (E.D. Mo. 2018).

In *A.T.*, this District Court stated "[t]here was no suggestion [by the U. S. Supreme Court] that mere expectation or knowledge of the effects of a distributing relationship sufficed to establish personal jurisdiction. Instead, it was held that 'a defendant's general connections with the forum are not enough.'" *A.T.*, 341 F. Supp.3d at 1037 (quoting *Bristol-Myers Squibb,* 137 S. Ct. at 1781). In the instant case, regarding the incident in which plaintiff was injured, no allegations suggest defendant *itself* drove on Missouri roads, contracted with Missouri residents, sold molybdenum to Missouri residents, or delivered it to Missouri. Plaintiff has not shown that defendant itself used Missouri roadways or instructed plaintiff or plaintiff's employer to do so. He argues defendant effectively controlled plaintiff's route, and caused him to be in Missouri when the incident occurred, by the application of the Rand McNally MileMaker required by the contract between plaintiff's employer and defendant. The Court disagrees.

The record does not demonstrate that defendant took a significant action, relating to plaintiff's injury, in Missouri. Although the Rand McNally MileMaker was a contractually agreed upon method for reimbursing plaintiff's employer for fluctuating fuel costs, the use of the MileMaker did not control or limit the route chosen by Leon Cannon Trucking and plaintiff in a way that caused plaintiff to be in Missouri when he was injured. Further, the fact that defendant's plant is 15.4 miles from the Missouri border or that Highway 61 in Missouri offers a direct route is insufficient to support the exercise of personal jurisdiction, when the decision to travel Highway 61 in Missouri was made by plaintiff or his employer.

6

To establish the large quantity of the contacts defendant had with Missouri, plaintiff argues that during his twenty-one-month employment with Leon Cannon Trucking, he picked up 15-20 loads of molybdenum in Fort Madison, Iowa, and traveled the route through Missouri to deliver it in Louisiana and Texas. Taking the facts in the light most favorable to the plaintiff, the quantity and regularity of deliveries through Missouri favor jurisdiction in Missouri. However, the third factor, that the alleged negligence occurred in Iowa, disfavors personal jurisdiction in Missouri. Plaintiff argues that defendant "loaded hundreds of tractor-trailers filled with Molybdenum superbags" for delivery throughout the United States. (*Id.*) This argument disfavors specific personal jurisdiction, because these activities were not specific to Missouri. Further, plaintiff's argument that hundreds of loads of its product were transported by Leon Cannon Trucking across Missouri highways, sometimes even for delivery in Missouri, relies on the stream-of-commerce argument rejected in by this Court in *A.T.* and by the Supreme Court in *Bristol-Myers Squibb*.

Considering the remaining factors, although Missouri has an interest in vehicle accidents on its roadways generally, it is not the most convenient forum because of non-Missouri witnesses, plaintiff's not residing in Missouri, defendant not being a Missouri corporation, and none of the relevant tortious actions taking place in Missouri. Ultimately, the weight of the five factors disfavors specific jurisdiction in Missouri. Plaintiff has not established that defendant had sufficient minimum contacts with the State of Missouri to establish specific personal jurisdiction.

Accordingly, the motion of defendant to dismiss for lack of personal jurisdiction is sustained. An appropriate Judgment Order is issued herewith.

/s/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 22, 2020.